IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRADLEY G. DARRINGTON and VAL DARRINGTON,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>MILTON HERSHEY SCHOOL,<br><br>    *Defendant*. | CIVIL ACTION<br>NO. 18-4265 |

**PAPPERT, J.**                                          July 23, 2019

<u>**MEMORANDUM**</u>

  Bradley and Val Darrington sued the Milton Hershey School for religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. The School moved to compel arbitration pursuant to the terms of a collective bargaining agreement between the School and Plaintiffs' union. The Court ordered limited discovery on the arbitrability of Plaintiffs' claims. *See* (ECF No. 20). After completing limited discovery, the School renewed its Motion, which the Court denies for the reasons that follow.

I[1]

  Milton Hershey School hired Plaintiffs as full-time houseparents in May of 2013. (Compl. ¶ 22); *see also* (Pls.' Resps. Def.'s Req. Admis. ¶ 1, ECF No. 21-3 at 42, 52). While employed by the School, Plaintiffs were members of the Bakery, Confectionery, Tobacco Workers & Grain Millers International Local Union 464 ("the

---

[1]   The facts giving rise to Plaintiffs' claims have been summarized by the Court in a prior opinion. *See* (ECF No. 18). The Court will limit its recitation of facts to those relevant to the School's Motion.

1

Union"). (Pls.' Resps. Def.'s Req. Admis. ¶ 6, ECF No. 21-3 at 43, 53). The Collective Bargaining Agreement between the Union and the School states that "[t]he School recognizes the Union as the exclusive collective bargaining representative for all full-time houseparents . . . employed by the School . . . regarding wages, hours and other terms and conditions of employment." (Collective Bargaining Agreement ("CBA") § 2.1, ECF No. 21-3 at 9).

The CBA contains a non-discrimination provision:

> <u>Non-discrimination.</u> The Union and the School will not discriminate against employees or applicants on the basis of race, color, religion, age (40 and above), sex, national origin, disability status, and membership or non-membership in the Union. The School reserves the right to expand, contract, amend or otherwise modify its policies on non-discrimination to meet its legal obligations. The School will notify the Union of any changes in policy related to discrimination before announcing them to the workforce.

(CBA § 10.1.) The CBA also contains a four-step grievance procedure culminating in mandatory arbitration:

> <u>Grievance and Arbitration Procedure.</u>
> A. <u>Definition.</u> "Grievance" is defined as any dispute arising out of the terms and conditions of this Agreement, including, but not limited to, the discipline or discharge of any non-probationary member of the bargaining unit. The School and the Union also agree that a grievance hereunder includes *any dispute alleging discrimination against any employee(s) in the bargaining unit based upon membership in any protected categories under federal or state law and/or as set forth in Section 10.1 of this Agreement.* Nothing herein prevents an allegedly aggrieved employee(s) from filing a charge or complaint of discrimination involving the same dispute or controversy as the grievance with any state or federal administrative agency and the grievance may, at the parties' option, be held in abeyance while the administrative agency processes the charge or complaint. The parties further agree, however, that the Union, on behalf of itself and the allegedly aggrieved employee(s), waives, releases and discharges *any right to institute or maintain any private lawsuit alleging employment discrimination in any state or federal court regarding the matters encompassed within this grievance procedure. . . .* All grievances must be handled as provided in this Article, which sets forth the exclusive procedure for resolution of disputes arising out of the terms and conditions of this

2

> Agreement or the discipline or discharge of any non-probationary member of the bargaining unit.

(*Id.* at § 9.1 (emphasis added).)

## II

There is generally a presumption of arbitrability under collective bargaining agreements because arbitrators are in a better position than courts to interpret the terms of a CBA. *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78 (1998) (citing *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986) and *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581–82 (1960)). Where, however, a dispute "ultimately concerns not the application or interpretation of [a] CBA, but the meaning of a federal statute," it is not subject to the presumption of arbitration. *Id.* at 78–79 (finding petitioner's statutory employment discrimination claim not subject to the presumption of arbitrability because "the cause of action [he] asserts arises not out of contract, but out of the ADA, and is distinct from any right conferred by the collective-bargaining agreement").

Statutory, as opposed to contractual, claims are not only removed from the presumption of arbitrability associated with CBAs; "any CBA requirement to arbitrate [them] must be particularly clear." *Id.* In *Wright v. Universal Marine Service Corp.*, the United States Supreme Court held that with respect to employment discrimination claims, any union-negotiated waiver of an employee's statutory right to a judicial forum for such claims must be "clear and unmistakable." *Id.* at 79–80 (quoting *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983)). The Court found in *Wright* that an employee did not waive his right to file suit for discrimination under the ADA because the CBA at issue "contain[ed] no explicit incorporation of statutory antidiscrimination

3

requirements" and its arbitration provision extended generally to "'[m]atters under dispute' . . . which could be understood to mean matters in dispute under the contract." *Id*. at 80. The Supreme Court reaffirmed this standard in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), holding that a "collective bargaining agreement that clearly and unmistakably requires union members to arbitrate [statutory employment discrimination] claims is enforceable as a matter of federal law." *14 Penn Plaza*, 556 U.S. at 274.

Neither the Supreme Court nor the Third Circuit Court of Appeals has defined the contours of a "clear and unmistakable" waiver of statutory employment discrimination claims, but several circuit courts of appeals have opined on the issue. The Second Circuit Court of Appeals held there is no waiver if a CBA "neither explicitly compel[s] arbitration of statutory (as opposed to contractual) causes of action, nor . . . incorporate[s] specific antidiscrimination statutes."[2] *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 84 (2d Cir. 2016) (citing *Rogers v. N.Y.U.*, 220 F.3d 73, 77 (2d Cir. 2000), *abrogated on other grounds by 14 Penn Plaza LLC*, 556 U.S. 247) (noting that the First, Fourth, Fifth and Sixth Circuit Courts of Appeals "have likewise interpreted the 'clear and unmistakable' standard to require specific references . . . either to the statutes in question or to statutory causes of action generally").[3]

---

[2] In *Lawrence*, the court held that the petitioner did not waive his rights to file suit under Title VII, § 1981, the FLSA and New York state laws over his race and national origin discrimination claims. The CBA's antidiscrimination provision prohibited discrimination on the basis of "any characteristic protected by law" and the arbitration provision extended to "any dispute or grievance." *Lawrence*, 841 F.3d at 84–85.

[3] *See Cavallaro v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1, 7 n.7 (1st Cir. 2012), *Carson v. Giant Food, Inc.*, 175 F.3d 325, 331–32 (4th Cir. 1999), *Ibarra v. United Parcel Serv.*, 695 F.3d 354, 359–60 (5th Cir. 2012) and *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir. 1999). The Seventh Circuit Court of Appeals offered a similar interpretation of *Wright* in *Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1135 (7th Cir. 2017).

Our Court has similarly interpreted *Wright* to require explicit reference in a CBA to antidiscrimination statutes or statutory causes of action. In *Harrell v. Kellogg Co.*, 892 F. Supp. 2d 716 (E.D. Pa. 2012), the court held that "a CBA with a general arbitration provision and a nondiscrimination provision that does not expressly mention the federal antidiscrimination statute under which the employee seeks redress, does not contain an explicit waiver" of rights under 42 U.S.C. § 1981 to bring race discrimination claims in federal court. *Harrell*, 892 F. Supp. 2d at 724.[4] *See also Ruff v. Temple Univ.*, 2015 WL 10487942 (E.D. Pa. Feb. 27, 2015) (holding, citing *Harrell*, that a CBA that did not specifically mention any federal statute did not waive plaintiff's right to pursue Title VII claims in federal court); *Fralin v. Cty. of Bucks*. 296 F. Supp. 2d 609 (E.D. Pa. 2003) (holding that a PHRA claim was not subject to arbitration because the CBA's antidiscrimination clause "d[id] not explicitly cover statutory claims and d[id] not contain a clear and unmistakable waiver of plaintiff's right to a judicial forum for such claims"). *But see Babcock v. Butler Cty.*, 2012 WL 1655737 (W.D. Pa. May 10, 2012) (finding that a CBA required employees to exhaust a CBA's four-step grievance procedure before bringing their FLSA claims in federal court, even though the CBA did not reference the FLSA, because the CBA stated that "any dispute concerning the wages and hours" of employees is subject to the procedure).

The CBA in this case contains an arbitration provision and a separate non-discrimination provision. While the arbitration provision is not as "general" as the

---

[4] The CBA in *Harrell* contained an arbitration provision extending to "disputes or disagreements concerning the interpretation and application of the provisions of this Agreement." *Harrell*, 892 F. Supp. 2d at 720. It contained a separate antidiscrimination provision prohibiting "discriminat[ion] . . . with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, disability, age, or because an employee is a Veteran of the Vietnam Era" and specifically referenced the ADA. *Id.*

5

arbitration provisions analyzed in *Wright*, *Lawrence* and *Harrell*, it does not clearly and unmistakably waive *statutory* rights to a judicial forum for specific employment discrimination claims brought under federal or state law. The provision's reference to "protected categories under federal or state law" does no more than define the categories against which discrimination is contractually prohibited. *See Lawrence*, 841 F.3d at 85 ("[T]hese references define the discrimination that is prohibited, not the type of dispute (statutory rather than just contractual) that is subject to arbitration."). Similarly, the provision's reference to "state or federal court" does no more than clarify that contractual disputes may not be litigated in those forums.

The CBA's non-discrimination provision does not contain a clear and unmistakable waiver either. While the provision *contractually* prohibits discrimination on the basis of religion, among other protected categories, it does not clearly waive employees' statutory rights to litigate their religious discrimination claims. This CBA is readily distinguishable from the CBA at issue in *Thompson v. Air Transp. Int'l Liab. Co.*, 664 F.3d 723, 726 (8th Cir. 2011), a case on which the School relies. In *Thompson*, the employee admitted that his FMLA discrimination claims were subject to arbitration under a CBA. *Thompson*, 664 F.3d at 726. The court held that the CBA's arbitration provision, which expressly "waive[d] each and every cause of action and remedies provided under [anti-discriminatory federal and state] statutes . . . ," waived the employee's right to a judicial forum. *Id.*

The School also relies on *Singletary v. Enersys, Inc.*, 57 F. App'x 161 (4th Cir. 2003), a non-precedential Fourth Circuit Court of Appeals opinion. That case is also distinguishable from this one. The court in *Singletary* held that a CBA clearly and

6

unmistakably waived the employee's right to bring ADA and FMLA discrimination claims in federal court because it expressly required that "[a]ny and all claims regarding equal employment opportunity or provided for under this Article of the Agreement or under any federal or state employment law shall be exclusively addressed . . . under the grievance and arbitration provision of this Agreement." *Singletary*, 57 F. App'x at 163 (emphasis omitted). Even though the CBA did not mention the ADA or FMLA by name, the court concluded that this language clearly incorporated discrimination claims arising under federal and state law in addition to contractual claims. Here, in contrast, the CBA does not expressly incorporate claims arising under federal or state law.

Plaintiffs' causes of action arise not out of contract, but out of Title VII and the PHRA, and are distinct from rights conferred by the CBA. *See Wright*, 525 U.S. at 79; *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 50 (1974) ("The distinctly separate nature of . . . contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence."); *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1204 (10th Cir. 2011) ("[U]nionized employees . . . subjected to discriminatory treatment hold two similar claims, one based in statute, and one based in contract." (internal citation omitted)). Because the CBA does not clearly and unmistakably waive Plaintiffs' right to bring their statutory discrimination claims in federal court, the School cannot compel arbitration.

This conclusion applies with equal force to Plaintiffs' retaliation claims. "Retaliation . . . is a form of discrimination because the complainant is being subjected to differential treatment." *Lawrence*, 841 F.3d at 85 (quoting *Jackson v. Birmingham*

7

*Bd. of Educ.*, 544 U.S. 167, 173–74 (2005). The CBA does not require Plaintiffs to arbitrate statutory discrimination claims or otherwise reference statutory claims of retaliation, so Plaintiffs may pursue their retaliation claims in federal court. *See id.* at 85–86.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.